IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN P. TIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. G-09-1842 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

OPINION AND ORDER

Pending before the Court, upon consent of the parties, are Plaintiff John P. Tims' ("Tims") and Defendant Michael J. Astrue's, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Tims appeals the final decision of the Commissioner that he is not entitled to receive Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, or Title XVI supplemental security income ("SSI") benefits, 42 U.S.C. § 1381, *et seq. See* Docket Entry Nos. 8 and 9. Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court, for the reasons set forth below, concludes that Tims' Motion for Summary Judgment (Docket Entry No. 8) should be granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 9) should be denied, the Commissioner's decision denying benefits should be reversed, and the case should be remanded, pursuant to sentence four, to the Social Security Administration ("SSA") for further proceedings.

I.   *Background*

On August 7, 2006, Tims filed applications for disability and SSI benefits with the SSA, alleging he had been unable to work since April 14, 2006, due to chronic pain from a spinal cord injury and major depression.[1]  (R. 8, 97-99, 100-104).[2]  After being denied benefits initially and upon reconsideration, on February 18, 2007, Tims requested an administrative hearing before an administrative law judge ("ALJ"), which was acknowledged on June 25, 2007.  (R. 62-63, 64, 70-71, 72-73, 76-80).

A hearing was held on May 6, 2008, in Shreveport, Louisiana, at which time the ALJ heard testimony from Tims, Pat Tice (Tims' sister), and Joanie Creighton, a vocational expert ("VE").  (R. 16-50).  In a decision dated November 3, 2008, the ALJ denied Tims' applications for benefits.  (R. 5-15).  On December 10, 2008, Tims appealed the ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals.  (R. 4).  On March 27, 2009, the Appeals Council denied Tims' request to review the ALJ's determination.  (R. 1-3).  This rendered the ALJ's opinion the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Tims filed this case on June 10, 2009, seeking judicial review of the Commissioner's denial of his claim for benefits.  *See* Docket Entry No. 1.

---

[1] "Depression" is a mental state of depressed mood characterized by feelings of sadness, despair, and discouragement. It can range from normal feelings of the "blues" to major depressive disorder. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 477 (29th ed. 2000).  "Major depressive disorder"denotes a mood disorder characterized by the occurrence of one or more major depressive episodes and the absence of any  history or  manic, mixed,  or hypomanic episodes. *See id.* at 530.

[2] References made to the administrative record (*e.g.*, transcripts, exhibits, and other documents) will be denoted by an "R" followed by the applicable page number(s).

2

II.   *Analysis*

   A.   *Statutory Bases for Benefits*

SSI benefits are authorized by Title XVI of the Act and are funded by general tax revenues. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001). The SSI Program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 20 C.F.R. § 416.110. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *See Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *see also* 20 C.F.R. § 416.335. The applicable regulation provides:

> When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.

20 C.F.R. § 416.335. Thus, the month following an application, here, August 2006, fixes the earliest date from which benefits can be paid. Eligibility for SSI payments, however, is not dependent on insured status. *See* 42 U.S.C. § 1382(a).

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes. *See also* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled*, regardless of indigence. A claimant for disability insurance can collect benefits for up to twelve

months of disability prior to the filing of an application. *See* 20 C.F.R. §§ 404.131, 404.315; *see also Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). For purposes of Title II disability benefits, Tims has acquired sufficient quarters of coverage to remain insured through December 31, 2010. (R. 8, 10). Thus, Tims must establish disability on or before that date in order to be entitled to benefits.

While these are separate and distinct programs, applicants seeking benefits under either statutory provision must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). Under both provisions, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). Moreover, the law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).

  B. *Standard of Review*

    1. *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving

party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2. *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla, but may be less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown*, 192 F.3d at 496.

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.*

C.   *ALJ's Determination*

An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.   An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.   If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05. The claimant has the burden to prove disability under the first four steps. *See Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236. If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his or her existing impairments, the burden shifts back to the claimant to prove that he or she cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id*.

      The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful

activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. §§ 404.1572(a),(b), 416.972.

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3). "[A]n individual is 'under a disability, only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if he applied. *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since April 14, 2006, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment[s]: status post cervical diskectomy at C5-6 with fusion and allogroft and major depression (20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) reduced by: the ability to occasionally climb (but not ladders, ropes or scaffolds), balance, stoop, kneel, crouch, and crawl; the ability to occasionally reach overhead, but otherwise able to frequently reach, handle, and finger; the inability to fully rotate his neck to the right and left; and a need to avoid excessive exposure to loud noise. He is also moderately limited in the ability [to]: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; interact with the general public; and set goals independently of others. Light work activity is defined as work, which involves lifting of no more than 20 pounds occasionally, and up to 10 pounds frequently. The full range of light work requires standing and walking for up to six hours during an eight-hour workday and sitting intermittently during the remaining time. Moderate limitations in mental abilities are defined as, moderate limitations, but with the ability to perform the task satisfactorily.

6. The claimant is unable to perform any past relevant (20 C.F.R. §§ 404.1565 and 416.965).

(R. 10-13). With respect to step five, the ALJ found:

7. The claimant was born [in] March . . . 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 14, 2006 through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(R. 13-15).

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). To determine whether the decision to deny Tims' claim for disability benefits is supported by substantial evidence, the court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; as well as, (4) the plaintiff's age, educational background, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

### D. *Issues Presented*

Tims contends that the decision of the ALJ is not supported by substantial evidence. Specifically, Tims claims that the ALJ erred: (1) in the evaluation of Tims' chronic pain and/or medication side effects; and (2) by finding that Tims could perform all of the duties of a "Cashier II" job on a full-time basis. *See* Docket Entry No. 8. The Commissioner disagrees with Tims'

contentions, maintaining that the ALJ's decision is supported by substantial evidence. *See* Docket Entry Nos. 9, 10.

### 1. *Subjective Complaints*

Tims suffers from chronic pain in his back and neck. In May 2006, Tims was injured while at work. Hospital records report Tims as having a large herniation of C5-6 with cervical myelopathy. (R. 180). It was further noted that he suffered from cervical spondylosis, cervical cord compression, cervical pain, and cervical instability. (R. 180). In May 2006, Tims underwent an anterior cervical diskectomy of C5-6 with osteophytectomy and bilateral C6 root foraminotomies; interbody fusion using cortical allograft, C5-6, with allograft fastening; and anterior cervical plating using Premier plating system. (R. 180).

Following the surgery, the record is replete with references to Tims' chronic pain in his neck, back, and shoulder. (R. 184, 185, 186, 192, 194, 195, 198, 204, 215, 219, 221, 236, 237, 269). In an attempt to address his pain, David J. MacDougall, D.O., has prescribed Tims several narcotic pain medications—*e.g.*, Lortab (Oxycodone), Norco, Valium, Toradol, Medrol Dospak, Stadol, Norflex, Dilaudid, Soma and Hyrdrocodone. (R. 33, 193, 195, 204, 208, 210, 221). Additionally, the record contains several references to Tims' physical limitations—not being able to turn his head; cannot stoop over; unable to bend; constant pain; and a tremor in his hand. (R. 27, 28, 44, 128, 149, 221, 243, 246).

A psychological evaluation prepared by Gary Milford, Ph.D. diagnosed Tims with major depression and assessed his intelligence as low average, with the ability to perform like a beginning 8th grade student. (R. 266-269). At the time of the hearing, it was noted that Tims

takes Prozac for depression. (R. 20). Tims' physical and mental limitations are corroborated by his sister. (R. 37-39, 248).

Despite documentation by Drs. MacDougall and Milford that Tims suffers from chronic pain and depression, the ALJ, without the assistance of a medical expert, discounted Tims' credibility. Indeed, in his decision, the ALJ improperly cites to portions of the medical record to support the ALJ's unfavorable decision. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Additionally, the ALJ fails to analyze the side effects of medications and/or the impact of such side effects on Tims' ability to maintain competitive employment. *See id.* at 397. Consequently, this case must be remanded to review, preferably with the assistance of a medical expert, Tims' physical and mental limitations and any side effects stemming from medications prescribed.

### 2.  *Residual Functional Capacity*

Here, the ALJ determined that Tims could not return to his past work of medium and heavy levels of exertion and that Tims' impairments were "more limiting than was concluded by the state examiners." (R. 13). Notwithstanding, the ALJ discounted Tims' statements concerning the intensity, persistence, and limiting effects of his symptoms. (R. 12). The ALJ determined that Tims could perform light duty work, reduced by the following:

> . . . the ability to occasionally climb (but not ladders, ropes or scaffolds), balance, stoop, kneel, crouch, and crawl; the ability to occasionally reach overhead, but otherwise able to frequently reach, handle, and finger; the inability to fully rotate his neck to the right and left; and a need to avoid excessive exposure to loud noise. He is also moderately limited in the ability [to]: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; interact with the general public; and set goals independently of others.

> Light work activity is defined as work, which involves lifting of no more than 20 pounds occasionally, and up to 10 pounds frequently. The full range of light work requires standing and walking for up to six hours during an eight-hour workday and sitting intermittently during the remaining time. Moderate limitations in mental abilities are defined as, moderate limitations, but with the ability to perform the task satisfactorily.

(R. 11-12). With the assistance of a vocational expert, the ALJ found that Tims could perform one job—full-time duties of "Cashier II," which is defined in the Dictionary of Occupation Titles ("DOT") as:

> Ticket clerk receives cash from customers or employees in payment for goods or services and records amounts received: recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase tax and rebates on monitor screen. May sell candy, stamps . . . . May press numeric keys of computer corresponding to gasoline pump to reset meter on pumps and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-booth Cashier (amuse. & rec.).

See *Dictionary of Occupational Titles*, § 212.462-010 (4th ed. 1991).

Contrary to the ALJ's finding, Tims' physical and mental limitations preclude him from performing the full range of duties required of a Cashier II position on a sustained basis. Indeed, the medical record of evidence demonstrates that Tims' reaching is impaired due to severe spinal damage. (R. 128, 149). Additionally, Tims suffers from tingling and numbness in his extremities as well as tremors in his right, dominant hand. (R. 20, 34-35, 221). He walks with a limp; he

13

experiences pain when bending at the waist; he has neck pain and limited neck rotation ability; he has impaired hearing, he suffers from arm pain; he must sit with a special pillow support and has difficulty standing and walking; and he must lay down 1-3 hours a day. (R. 20, 26-27, 31-36, 170, 221). Moreover, according to his treating physician, Dr. MacDougall and Tims' own testimony, Tims is unable to lift 20 pounds. (R. 14-16, 31,128, 173).

With respect to his mental limitations, the ALJ failed to complete a Mental Residual Functional Capacity Form. Instead, without the assistance of a psychologist, psychiatrist, or even a medical doctor, the ALJ inexplicably determined that Tims' mental capacity allowed him to perform the functions of a cashier. This Court disagrees. Tims' low average I.Q., standing alone, would impede his ability to perform the duties of the Cashier II. He has limited mathematical development and has problems with reading and writing. (R. 22, 269). He is unable to spell. (R. 22). Moreover, he suffers from depression and stress, which cause him difficulty maintaining concentration. (R. 13, 266-269). Considering all of Tims' limitations in combination, it does not appear that the ALJ's finding that Tims could work as a Cashier II is supported by substantial evidence. As such, this case must be remanded for further development.

## III.   *Conclusion*

Considering the record as a whole, this Court concludes that the proper legal standards were not adhered to and the Commissioner's decision is not supported by substantial evidence. Accordingly, it is the **ORDER** of this Court that Plaintiff's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**.

It is further **ORDERED** that Defendant's Motion for Summary Judgment (Docket Entry No. 9) is **DENIED**.

It is further **ORDERED** that this action is **REVERSED** and **REMANDED** to the Commissioner for a new hearing to properly consider any side effects from Tims' medications as it relates to credibility assessment and RFC, and to properly assess Tims' alleged mental impairments and whether Tims is capable of performing any jobs considering all of his limitations.

**DONE** at Galveston, Texas, this _____24th_____ day of August, 2010.

_____
John R. Froeschner
United States Magistrate Judge